DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas which granted a motion for a directed verdict against appellants, Donna Dalferro et al., and held that reasonable minds could only conclude that Dalferro was not acting within the course and scope of her employment with Citizens Banking Company at the time she suffered injuries in a motorcycle accident. For all of the reasons set forth below, this court affirms the judgment of the trial court. *Page 2 
 {¶ 2} Appellants set forth the following two assignments of error:
 {¶ 3} "1: The trial court erred in directing the verdict against plaintiff-appellants.
 {¶ 4} "2: The trial court erred in not admitting the insurance contracts into evidence for the jury."
 {¶ 5} The following undisputed facts are relevant to the issues raised on appeal. Donna Dalferro has been employed by the Citizens Banking Company for 15 years. Appellant has distinguished herself as a valued employee of the bank. Appellant has been internally promoted on various occasions, escalating from an entry-level employee to currently serving as a bank vice-president.
 {¶ 6} As a vice-president of Citizens Bank, Dalferro's office is in a commercial bank building. Dalferro maintains a routine work schedule corresponding to standard banking hours.
 {¶ 7} On Saturday, June 26, 1999, Dalferro did not work. Dalferro completed personal tasks at her personal home, including cleaning and yard work. At approximately 4:30 p.m. that afternoon, Dalferro and her husband set out on a pleasure ride on her husband's Harley-Davidson motorcycle. Neither party wore a protective helmet during this motorcycle excursion. The motorcycle excursion was not connected in any way to Dalferro's position with Citizens Bank.
 {¶ 8} The Dalferros traveled on their motorcycle to a classic car show at a Dairy Queen in the vicinity of Huron, Ohio. After viewing some of the classic cars on display, *Page 3 
the Dalferros left and traveled to a live music concert being held at the Huron boat basin. The Dalferros watched a Beatles' impersonator band, Back Beat, perform at the concert.
 {¶ 9} The Dalferros later left the concert and set off on their motorcycle to visit Mrs. Dalferro's mother in Sandusky, Ohio. While en route down Route 6 towards Mrs. Dalferro's mother's residence, a motor vehicle ran a red light, struck the Dalferros' motorcycle, and caused injuries.
 {¶ 10} On September 29, 1999, the Dalferros filed their complaint alleging negligence against the tortfeasor, a UIM claim against their insurance carrier, a declaratory judgment request, and a loss of consortium claim. On October 25, 1999, appellants' carrier filed its answer asserting that appellants had expressly rejected UIM umbrella coverage.
 {¶ 11} On January 11, 2000, appellants filed a first amended complaint clarifying the name of one of the corporate insurance carrier defendants that had been incorrectly named in the original filing. On August 25, 2000, appellants filed a second amended complaint asserting aPontzer claim against Mrs. Dalferro's employer's insurance carrier. On June 23, 1999, the Supreme Court of Ohio issued the Pontzer decision in which it held that employees of a corporation should be deemed "insureds" under corporate UIM policies and be granted UIM coverage regardless of whether they were acting within the scope of their employment at the time of being injured in an accident.
 {¶ 12} On November 29, 2000, appellants filed for summary judgment. The parties engaged in extensive opposing summary judgment briefing. On May 31, 2001, *Page 4 
appellants filed a stipulation dismissing the tortfeasor and several insurance carriers from the case as appellants reached settlements totaling $724,000 with these parties. The Pontzer carriers remained in the case.
 {¶ 13} The remaining parties engaged in additional discovery and summary judgment briefing. On November 5, 2003, while the case was pending, the Supreme Court of Ohio issued a decision limiting the scope of Pontzer based UIM coverage to only those injured persons who were acting in the course and scope of their employment at the time of their accident. Westfield Ins. Co. v. Galatis, 100 Ohio St. 3d 216.
 {¶ 14} In light of the Galatis ruling being determinative to this pending UIM case, appellants filed additional summary judgment affidavits and briefs in an effort to satisfy the new legal standard established by Galatis. Appellants now asserted that Mrs. Dalferro was in the course and scope of her employment at the time of the accident.
 {¶ 15} The case inexplicably languished for over another year with no summary judgment ruling. Ultimately, the original trial judge retired from the bench and the case was assigned by the Supreme Court of Ohio to another judge. On November 22, 2005, the judge denied the pending motions for summary judgment and set the case for trial. We note that this case had been active for over six years at the time the summary judgment ruling was tendered by the newly assigned judge. The law is subject to significant changes over such an extended period of time, as evidenced by the Galatis ruling. *Page 5 
 {¶ 16} The case proceeded to jury trial on December 12, 2005. At the close of trial, Mrs. Dalferro's UM/UIM carriers moved the court for a directed verdict pursuant to Civ. R. 50(A)(4). On January 27, 2006, the trial court ruled that reasonable minds could only conclude that Mrs. Dalferro was not acting within the course and scope of her employment at the time of the accident and granted the motion for directed verdict. A timely notice of appeal was filed.
 {¶ 17} In their first assignment of error, appellants assert that the trial court erred in granting the insurance carriers' motion for directed verdict. In support, appellants argue that Dalferro's position with Citizens Bank essentially transforms her into a perpetual employee of the bank.
 {¶ 18} Appellants preface their contention that Dalferro is always within the course and scope of her employment upon the Citizens' corporate code of conduct. The bank's code of conduct establishes, in relevant part: "When participating in public affairs and other off the job activities, all employees are cautioned to refrain from conduct that could reflect negatively on the participant or the company." Appellants contend that this code of conduct transforms Mrs. Dalferro into an "ambassador" of the bank such that she must be construed as being within the scope of her employment regardless of whether her activities are business, public, or personal.
 {¶ 19} Civ. R. 50(A)(4) states:
 {¶ 20} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the *Page 6 
motion is directed, finds that upon any determinative issue reasonable minds could come but to one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 21} As applied to the instant case, the trial court properly concluded that the determinative issue in this case is whether or not Mrs. Dalferro was acting within the course and scope of her employment with Citizens Bank at the time of her motorcycle accident. This issue is pivotal inasmuch as the answer dictates whether her employer's UM/UIM provides coverage to her based upon current and controlling Ohio UM/UIM case law.
 {¶ 22} In order to determine the propriety of the trial court's directed verdict decision, we must review on a de novo basis this core question of law, whether Mrs. Dalferro was acting within the course and scope of her employment. The record unambiguously establishes that Dalferro maintained a routine work schedule corresponding to the hours of operation of the bank.
 {¶ 23} The bank policy at issue cautioned bank employees to avoid conduct or actions in their public and personal activities not connected to the bank which could reflect negatively on their employer. We find no relevant legal authority which establishes that such a provision results in employees subject to such a policy being construed as perpetually within the course and scope of their employment. *Page 7 
 {¶ 24} The record establishes that on the day of her accident, Dalferro did not perform any duties on behalf of Citizens Bank. Dalferro's decision to embark on a motorcycle leisure ride with her husband on his Harley-Davidson was in no way connected to Citizens Bank. The classic car show where the Dalferros stopped was in no way connected to Citizens Bank. The live music concert where the Dalferros stopped was in no way connected to Citizens Bank. The final leg of the motorcycle trip towards Mrs. Dalferro's mother's home during which the accident occurred was in no way connected to Citizens Bank.
 {¶ 25} We are not persuaded that an employer's code of conduct cautioning the exercise of prudence in nonwork related actions by employees renders an employee within the course and scope of employment on an uninterrupted basis. The record shows that there was no nexus between Citizens Bank and the activity of Mrs. Dalferro at the time of her accident. She was not acting within the course and scope of her employment when her motorcycle was struck by the tortfeasor.
 {¶ 26} Reviewing this case on a de novo basis, we find the trial court properly concluded that reasonable minds could only conclude that Mrs. Dalferro was not acting within the course and scope of her employment at the time of her accident. The motion for directed verdict was properly granted. Appellants' first assignment of error is not well-taken.
 {¶ 27} In their second assignment of error, appellants argue that the trial court erred in not admitting the disputed insurance contract into evidence for the jury. In *Page 8 
addressing appellants' first assignment of error, we concluded that Dalferro was not acting in the course and scope of her employment at the time of her accident. This determination forecloses any possibility that the UM/UIM policies carried by Great Northern and Federal furnish coverage to appellant for her accident. As such, those policies have no legal relevance to any further consideration of the court. As such, we find appellants' second assignment of error is rendered moot by our ruling on the first assignment of error pursuant to App. R. 12(A)(1)(c). Appellants' second assignment of error is moot and, therefore, not well-taken.
 {¶ 28} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1